IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SEAN P. O'NEILL,

                Plaintiff,

   v.

COMMISSIONER SOCIAL
SECURITY ADMINISTRATION,

                Defendant.

No. 6:16-cv-00749-HZ

OPINION & ORDER

Robert A. Baron
Kathryn Tassinari
Harder Wells Baron & Manning, PC
474 Willamette Street, Suite 200
Eugene, OR 97401

    Attorneys for Plaintiff

Janice E. Hebert
Assistant United States Attorney
U.S. Attorney's Office, District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

1 - OPINION & ORDER

Heather L. Griffith
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

    Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Sean O'Neill brings this action for judicial review of the Commissioner's final decision denying his application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act and Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). The Commissioner's decision is affirmed.

## PROCEDURAL BACKGROUND

Plaintiff applied for SSI and DIB on November 26, 2012, alleging disability as of February 14, 2009. Tr. 21, 119-25.[1] His application was denied initially and on reconsideration. Tr. 140-43. On January 9, 2015 and June 2, 2015, Plaintiff appeared, with counsel, for hearings before an Administrative Law Judge (ALJ). Tr. 659, 678. On June 30, 2015, the ALJ found Plaintiff not disabled. Tr. 35. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on kidney problems, degenerative cartilage disease in his knee and hip, asthma, and the following mental health disorders: bipolar, PTSD, and schizophrenia. Tr. 37. Plaintiff was 38 years-old at the time of the first administrative hearing.

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 11.

Tr. 37. Plaintiff completed the twelfth grade in special education classes. Tr. 702. He worked as a caregiver, dishwasher, cook, gas station attendant, and ride operator. Tr. 51.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *See, e.g., Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. 137 at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot

perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since February 14, 2009, the alleged onset date. Tr. 23. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "bilateral hip degenerative joint disease, status post multiple surgeries; right knee debridement and meniscal tear; left knee degenerative joint disease; obesity; psychotic disorder; schizoaffective disorder; bipolar type; cannabis use disorder; and posttraumatic stress disorder (PTSD)." Tr. 24. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 25. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), with the following limitations:

> Claimant has the residual functional capacity to perform light exertion work with lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, standing and/or walking about six hours of an eight-hour workday and sitting about six hours of an eight-hour workday, with normal breaks. He can occasionally climb ramps or stairs and never climb ladders, ropes, and scaffolds. He can frequently stoop and occasionally kneel, crouch, and crawl. He is to avoid concentrated exposure to workplace hazards such as hazardous machinery, operational control of moving machinery, and unprotected heights. The claimant can understand and carry out simple instructions in a work environment with few, if any, workplace changes. He is limited to isolated work with no public contact, only incidental coworker contact, and occasional supervisor contact, generally limited to checking in at the beginning of each shift to give work assignment and/or answer questions.

Tr. 27. The ALJ concluded that Plaintiff is unable to perform any past relevant work. Tr. 33. However, at step five the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as bench assembler, small parts assembler, and basket filler. Tr. 34. Thus, the ALJ concluded that Plaintiff is not disabled. *Id.*

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*; *see also Batson*, 359 F.3d at 1193. However, the court cannot not rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. *Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

///

**DISCUSSION**

Plaintiff contends that the ALJ erred by (1) failing to credit the full opinion of examining psychologist Dr. Cole; (2) failing to give clear and convincing reasons for rejecting Plaintiff's testimony; (3) rejecting the opinion of Plaintiff's wife, Cassandra O'Neill; and (4) finding that Plaintiff retains the ability to perform other work in the national economy. The Court upholds the ALJ's decision.

**I.  Examining Psychologist Dr. Cole**

The ALJ credited the majority of Dr. Cole's opinion. However, Plaintiff contends that the ALJ erred by assigning little weight to Dr. Cole's assessment of Plaintiff's limited ability to interact appropriately with the public, supervisors, and coworkers, and his ability to respond appropriately to usual work situations and changes in routine work settings.

Social security law recognizes three types of physicians: (1) treating, (2) examining, and (3) nonexamining. *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). The ALJ may reject the uncontradicted opinion of an examining physician by providing clear and convincing reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31. If an examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Barnhart*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)(citation omitted). Further, an ALJ may reject a physician's opinion if it conflicts with the physician's other findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Although the

contrary opinion of a non-treating medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record. *Magallanes*, 881 F.2d at 752.

It is well-established that "the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v Barnhart*, 278 F.3d, 947, 957 (9th Cir. 2002); *see also Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ may "permissibly reject . . . check-off reports that [do] not contain any explanation of the bases of their conclusions"). A "physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" *Morgan v. Comm'r Soc. Sec. Admin*, 169 F.3d 595, 602 (9th Cir. 1999) (quoting *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)).

Dr. Cole conducted a psychodiagnostic evaluation of Plaintiff on February 2, 2015. Tr. 592. Dr. Cole reviewed Plaintiff's records, including reports from the Coos County Mental Health Department. *Id.* Dr. Cole also interviewed Plaintiff and conducted several tests. *Id.*

Plaintiff reported to Dr. Cole that he was born with fetal alcohol syndrome and had experienced physical abuse as a child from his mother and stepfather. *Id.* Plaintiff stated that he had seen various mental health professionals throughout his life for treatment of symptoms of bipolar disorder, schizophrenic disorder, a personality disorder, PTSD, anxiety, depression, and ADHD. Tr. 593. He had been hospitalized for psychiatric reasons five times and had attempted suicide three times. *Id.* Plaintiff described an extensive family history of substance abuse. *Id.*

Plaintiff reported using a variety of drugs throughout his life and reported that he currently uses marijuana daily. *Id.*

Dr. Cole noted that Plaintiff's last job was working as a caregiver for Bay Crest Village from 2008 to 2009. *Id.* Plaintiff worked 40 hours a week and got along with his supervisor, but he had problems with his coworkers due to "personality conflicts." Tr. 594.

Dr. Cole reported that Plaintiff had been homeless for the previous four years. Tr. 596. Plaintiff showers when possible, takes the bus, shops on a daily basis, has problems managing money, does not have a bank account, and does not cook at all. *Id.* As to what Plaintiff "does for fun," Dr. Cole noted that he enjoys reading and "seeing his friends on a daily basis." *Id.* "No further social activities or hobbies were indicated by the client, but he goes to church once a week." *Id.*

Dr. Cole diagnosed Plaintiff with the following: schizoaffective disorder, bipolar type; post-traumatic stress disorder, without dissociative symptoms; cannabis use disorder—severe; rule/out unspecified personality disorder; and rule/out specific learning disorders, with impairment in reading, written expression, and mathematics. Tr. 596. Dr. Cole also filled out a "Medical Source Statement" in which he rated Plaintiff's ability to do mental work-related activities. Tr. 599. He noted a number of areas in which Plaintiff's functioning is moderately limited. In addition, he noted that Plaintiff had marked limitations in the following two areas: (1) "interact appropriately with co-workers"; and (2) "respond appropriately to usual work situations and to changes in a routine work setting." Tr. 600. "Marked" limitations are defined on the form as "serious limitations in this area. There is a substantial loss in the ability to effectively function." Tr. 599.

The ALJ assigned "little weight" to Dr. Cole's opinion regarding the two areas in which Plaintiff has marked limitations. Tr. 32. According to the ALJ, Plaintiff's report of socializing with friends daily "is inconsistent with a substantial loss in the ability to interact appropriately with coworkers." *Id.* The ALJ acknowledged that these two activities were "not entirely on par," yet he concluded that "the ability to maintain relationships with such acquaintances suggests a capacity for interacting with others that would be consistent with the provisions of the residual functional capacity." *Id.* The ALJ also explained that, for both areas assessed with "marked" limitations, "Dr. Cole failed to provide an explanation in support and the remainder of the medical record does not establish significant, ongoing related issues." *Id.*

Regarding the two areas singled out by the ALJ, Dr. Cole's opinion is contradicted by Dr. Hennings, reviewing state agency psychologist. Dr. Hennings opined that Plaintiff was moderately limited in his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Tr. 49-50. He stated that Plaintiff would benefit from a job with "minimal supervisor interactions." Tr. 50. He also opined that Plaintiff was not significantly limited in his ability to respond appropriately to changes in the work setting. *Id.* Therefore, the ALJ must provide specific and legitimate reasons, supported by substantial evidence, to discount Dr. Cole's opinion.

Plaintiff argues that Dr. Cole's opinion regarding Plaintiff's inability to interact appropriately with coworkers is not contradicted by Plaintiff's ability to socialize with friends. In support of his argument, Plaintiff points to various parts of the record that demonstrate Plaintiff's anger and hostility towards other people. However, the portions of the record cited to by Plaintiff primarily consist of testimony by Plaintiff and his wife, which is discounted for the reasons stated below, or involve Plaintiff's interactions with medical professionals. The Court agrees

with Plaintiff that socializing with friends is not equivalent to relating to people in the workplace. Nevertheless, the ALJ's additional explanation makes the ALJ's inference reasonable: the ability to maintain relationships with friends suggests a capacity to interact with others that is consistent with the RFC, which allows Plaintiff to have incidental coworker contact. While Plaintiff offers an alternative interpretation of the evidence, the Court must uphold the ALJ's interpretation because it is reasonable. *See Tommasetti*, 533 F.3d at 1038 ("The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation.").

The ALJ also properly discounted the other "marked" limitation found by Dr. Cole, the inability to respond appropriately to usual work situations and changes in routine work settings, because Dr. Cole failed to provide an explanation in support. Plaintiff points to Dr. Cole's observations regarding Plaintiff's poor judgment, insight, attention, and concentration. Pl.'s Br. 14, ECF 12. However, none of these observations provide support for the conclusion that Plaintiff cannot respond to work situations or changes at work. Further, the RFC limits Plaintiff to a work environment with few, if any, workplace changes. Thus, the ALJ reasonably discounted Dr. Cole's opinion regarding a marked limitation but nevertheless incorporated some limitation regarding Plaintiff's ability to respond to changes. In sum, both of the reasons the ALJ gave for discounting a portion of Dr. Cole's opinion were specific and legitimate, supported by substantial evidence in the record.

## II. Plaintiff's Credibility

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting his testimony about his impairments and their limiting effects. In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. 20 C.F.R. § 404.1529. First, the ALJ determines whether

there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). If such evidence exists, and barring affirmative evidence of malingering, the ALJ must give clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Id.* at 1284; *see also Lingenfelter*, 504 F.3d at 1036. If the record contains affirmative evidence of malingering, the ALJ need only provide specific and legitimate reasons for an adverse credibility finding. *Morgan*, 169 F.3d at 599.

The ALJ may consider many factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Tommasetti*, 533 F.3d at 1039. In addition, conflicts between a claimant's testimony and the objective medical evidence in the record can undermine a claimant's credibility. *Morgan*, 169 F.3d at 600. Where the ALJ's credibility findings are supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). However, a general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993); *see also Morgan*, 169 F.3d at 599.

Plaintiff testified regarding his extensive struggles with his mental health. Plaintiff was sexually and physically abused as a child, and described having mental health issues since the age of six. Tr. 694-95. According to Plaintiff, he has "been diagnosed with everything under the sun," such as split personality disorder, paranoia, schizophrenia, bipolar disorder, PTSD, and

depression. Tr. 694. He has "full audio and visual hallucinations," and hears voices. Tr. 694, 701. In addition, he has "extreme anger management problems" and has trouble concentrating due to "extreme ADD." Tr. 697.

Plaintiff also testified to multiple physical impairments. He has had six hip surgeries, including three hip replacements. Tr. 705. He also had kidney cancer and had to have a kidney removed. Tr. 712. Plaintiff testified that he can walk less than a quarter of a mile before he needs to sit down and take a break. Tr. 713. He can sit for an hour or two before needing to stand or walk due to leg cramping. Tr. 713-14. Four or five times a day, Plaintiff lies down to rest for an hour and a half. Tr. 714.

Plaintiff testified that he last worked as a caretaker. Tr. 695. He quit due to a problem with a coworker. *Id.* After quitting, he became homeless and has been homeless for the last four years. Tr. 696.

The ALJ found Plaintiff "not entirely credible" for several reasons. Tr. 29. Plaintiff had low but somewhat steady earnings over the course of his work history, suggesting an ability to sustain work activity. *Id.* In addition, Plaintiff's reports of his physical symptoms have been inconsistent. *Id.* As to his claims of mental impairments, the ALJ found that the medical record does not support Plaintiff's claims of inability to stay on task and handle interactions with others. Tr. 30. Plaintiff has failed to follow through with recommended or offered treatment. *Id.* Finally, the medical record does not support Plaintiff's testimony that he was in mental health treatment for a whole year at some point. Tr. 31.

A. Plaintiff's work history

Plaintiff earned some amount of money most years between 1994 and 2010. Tr. 132-33. However, Plaintiff rarely earned more than $5,000 in any given year. *Id.* At his peak, he earned

$8,231 in 2008. *Id.* As the ALJ noted, Plaintiff continued to earn some money in 2009 and 2010, after his alleged onset date. *Id.* Plaintiff told a consultative examiner that he worked 40 hours a week in his last job as a caregiver. Tr. 593. Furthermore, Plaintiff reported to a social worker in November of 2009 that he was currently employed. Tr. 255.

Contrary to the ALJ's conclusion, Plaintiff's past work history is not a clear and convincing reason to discount his testimony because it does not suggest a present ability to sustain work activity. As the ALJ found, Plaintiff is no longer able to perform his past relevant work. Tr. 33. In addition, even in 2009 when Plaintiff was still working, the record is full of evidence that Plaintiff struggled physically and mentally to sustain work. *See, e.g.* Tr. 509 (2/19/2009, Dr. Bert's note that Plaintiff has been unable to work); Tr. 501 (9/24/2009, Dr. Bert releasing Plaintiff back to work after a total hip arthroplasty); Tr. 254 (11/13/2009, Plaintiff threatening to kill two doctors and himself); Tr. 286 (11/16/2009, social worker's note that emotional issues are negatively affecting Plaintiff's employment); Tr. 695 (Plaintiff's hearing testimony that he struggled returning to work in 2009 because "[t]he slightest thing would set me off" and he had problems with a coworker).

Furthermore, as Plaintiff notes, he had additional hip and knee problems, as well as psychiatric hospitalizations, from 2009 through his hearing date in 2015. *See, e.g.*, Tr. 504 (hip replacement revision in July 2009); Tr. 459 (severe degenerative changes consistent with chronic arthritis, most likely related to his morbid obesity); Tr. 463 (psychiatric hospitalization in 2010 due to acute schizophrenia and homicidal ideation); Tr. 255 (10/26/2010, right meniscectomy); Tr. 484 (5/25/2011, right meniscus tear); (4/25/2013, right revision hip arthroplasty); Tr. 553 (2/1/14, hospitalization for suicidal ideation).

Thus, this case is unlike the two cases cited by Defendant in support of the ALJ's reasoning. *See Gregory v. Bowen*, 844 F.2d 664 (9th Cir. 1988); *Greger v. Barnhart*, 464 F.3d 968 (9th Cir. 2006). In *Gregory*, "substantial evidence indicated that the condition of Gregory's back had remained constant for a number of years and that her back problems had not prevented her from working over that time." *Gregory*, 844 F.2d at 667. Thus, the ALJ found that Gregory's lower back problems did not render her disabled. In *Greger*, the finding that Greger performed carpentry work "'under the table' . . . well after his date last insured" provided a clear and convincing reason to reject his testimony regarding pain and limitations. *Greger*, 464 F.3d at 972. Here, substantial evidence supports the opposite conclusion from *Gregory*—the evidence shows here that Plaintiff's conditions fluctuated and, at times, worsened for a number of years and Plaintiff stopped working entirely by 2010. *Greger* is also inapposite as there is no evidence that Plaintiff continued to work in physically or mentally demanding jobs "well after his date last insured." In sum, Plaintiff's work history is not a clear and convincing reason to discount his credibility.

B. Inconsistency of Plaintiff's Reports and Treatment

The ALJ found that Plaintiff's reports of his symptoms have been inconsistent and that his testimony of his medical history and limitations was inconsistent with treatment records. The ALJ provides many examples of these inconsistencies, both with regard to Plaintiff's physical and mental impairments. Plaintiff does not address most of the ALJ's examples. Instead, as to his physical impairments, he explains that he generally would improve after his many hip and knee surgeries, "but then another condition would arise." Pl.'s Br. 17, ECF 12. Plaintiff maintains that, by the time of the hearing, his physical impairments were consistent with his testimony that he needs to lie down five times a day, sit after walking less than a mile, and move around for 45

minutes after sitting for an hour or two. *Id.* Plaintiff does not address the contradiction between Plaintiff's statement to Dr. Vallier in 2013 that he never had pain relief after his 2009 hip revision and Dr. Bert's December 21, 2009 note regarding Plaintiff's lack of pain after his hip surgery. Tr. 479, 495. Nor does Plaintiff address the ALJ's observation that, since Plaintiff's third hip replacement, he reported an ability to walk several miles, Tr. 466, and was "doing excellent in the postoperative phase," Tr. 470.

As to Plaintiff's mental health impairments, the ALJ found that "the medical record does not support his claims of inability to stay on task and handle interactions with others within the parameters of the residual functional capacity." Tr. 30. The ALJ noted numerous examples of Plaintiff's limited engagement in treatment and conflicting and inconsistent reports of symptoms. Tr. 30-31. The ALJ observed that Plaintiff's contacts with mental health specialists were "largely centered on crisis rather than treatment and medical sources have not observed signs of ongoing psychosis as alleged by the claimant." Tr. 31.

Plaintiff concedes that he has not had consistent treatment. Nevertheless, he argues that the record reflects significant mental health issues, including hospitalizations and emergency room visits for suicidal ideation, that demonstrate interference with his ability to relate to other people. In addition, he points to a medical record that demonstrates that, at one point, he was not on medication because his insurance required a co-pay.

Plaintiff's arguments, however, fail to address the reasons that the ALJ cited in discounting the weight awarded to Plaintiff's testimony. The ALJ cited specific examples of inconsistencies between Plaintiff's reported symptoms and his behavior. For example, Plaintiff complained of an inability to sleep and hallucinations, yet he was observed sleeping during a hospital visit and showed no signs of psychosis. Tr. 30. As another example, Plaintiff testified

that he cannot use narcotics, yet there are medical records demonstrating that he was prescribed narcotics. Tr. 315-19. Plaintiff also told a physician's assistant that he stopped using marijuana, yet drug screens during the same time period show ongoing use. Tr. 339-43. In addition, the ALJ correctly noted that the medical record does not support Plaintiff's testimony that he was in mental health treatment for a whole year. Tr. 31.

Even assuming that Plaintiff is correct that the record reflects significant mental health issues, the ALJ pointed to specific examples of where the record also reflects Plaintiff's inconsistent reporting and limited engagement in treatment. These are clear and convincing reasons to discount a Plaintiff's credibility. *Tommasetti*, 533 F.3d at 1039 (affirming that an ALJ may discount a Plaintiff's credibility due to a failure to seek or follow a course of treatment and Plaintiff's inconsistent statements).

In sum, even though Plaintiff's work history is not a clear and convincing reason to discount Plaintiff's credibility, the ALJ provided many other reasons, such as Plaintiff's inconsistent reports of symptoms, failure to follow through with treatment, and inconsistencies with the medical record. Because the reasons are supported by substantial evidence, this Court "may not engage in second-guessing." *Id.* Therefore, the Court concludes that the ALJ did not err in discounting Plaintiff's credibility.

### III.  Lay Witness Ms. O'Neill

Plaintiff's wife, Cassandra O'Neill, completed a third-party function report in February of 2013. Tr. 187-94. Ms. O'Neill stated that Plaintiff cannot do physical labor, count change, spell, or spend time on the computer. Tr. 187. She wrote that Plaintiff "does not get along well with others." *Id.* According to Ms. O'Neill, Plaintiff sleeps sporadically and needs help getting dressed and showering. Tr. 188. She wrote that Plaintiff can only walk with a cane and he only

goes out every couple of days. Tr. 189. Ms. O'Neill stated that Plaintiff has problems getting along with other people when they are rude to him or try to take advantage of him. Tr. 191. She also explained that Plaintiff has trouble getting along with authority figures and got into an argument with his previous boss. Tr. 192. In Ms. O'Neill's opinion, Plaintiff "will never be able to work again due to worsening mental + physical issues. He cannot handle the stress of dealing with a job + cannot physical[ly] do any work anymore." Tr. 194.

The ALJ accepted Ms. O'Neill's statements as "descriptive of their perceptions." Tr. 29. However, the ALJ found that the statements were not fully consistent with the medical and other evidence of record. *Id.* In addition, the ALJ wrote that Ms. O'Neill would be "apt to overstate [Plaintiff's] functional limitations" because of her sympathy towards her husband. *Id.*

Lay testimony regarding a claimant's symptoms or how impairment affects the ability to work is competent evidence that an ALJ must take into account. *Molina*, 674 F.3d at 1114. However, "[a]n ALJ need only give germane reasons for discrediting the testimony of lay witnesses." *Bayliss*, 427 F.3d at 1218.

Neither of the reasons provided by the ALJ are germane reasons to discount Ms. O'Neill's testimony. An ALJ may only reject lay witness testimony as unsupported by the objective medical evidence when the ALJ provides a sufficient discussion of that issue. *Glover*, 835 F. Supp. 2d at 1012-13 ("The sufficiency of the ALJ's rejection of lay witness testimony . . . will depend on the particular case and the thoroughness with which the ALJ conducts and discusses his or her evaluation of the evidence."). "[T]his discussion must occur within the parameters otherwise applicable to the evaluation of evidence generally and to the evaluation of lay witness testimony in particular." *Id.* The ALJ's assertion that Ms. O'Neill's statements are

"not fully consistent with the medical and other evidence of record" is too vague and conclusory to be sufficient to discount her testimony.

As to the relationship between Ms. O'Neill and Plaintiff, "the fact that testimony from a family member or loved one appears to be colored by affection . . . standing alone and without further explanation" is not a germane reason to reject the testimony. *Noblit v. Colvin*, No. 3:13-cv-00628-HU, 2014 WL 4059770, at *8 (D. Or. Aug. 15, 2014); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (explaining that being an "interested party," in the abstract, is an insufficient reason to reject a spouse's testimony because "friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [his or] her condition") (quoting *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993)). *See also Sylvester v. Astrue*, No. 03:11–CV–699–HZ, 2012 WL 2899244, at *4 (D. Or. July 13, 2012) (holding the rejection of third party testimony based *solely* on a personal relationship improper, though the relationship could be considered in addition to other germane reasons). Therefore, given that the ALJ erred in rejecting Ms. O'Neill as inconsistent with the medical evidence, Ms. O'Neill's personal relationship cannot stand alone to serve as a germane reason to discount her testimony.

However, the ALJ's error was harmless. *See Molina*, 674 F.3d at 1115. Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, any error by the ALJ is inconsequential. *Id.* at 1117. Here, Ms. O'Neill's description of Plaintiff's limitations were "largely consistent with [Plaintiff's] self-report." Tr. 29. Thus, the reasons the ALJ discounted Plaintiff's testimony "apply equally well" to Ms. O'Neill's testimony. *See Molina*, 674 F.3d at 1114-22 (affirming the ALJ's decision "where the

same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims") (citation and internal quotations omitted). The ALJ's decision is upheld as to this issue.

## IV. RFC and VE Hypothetical

Plaintiff argues that the VE's testimony was not based on all of Plaintiff's limitations supported by the record. According to Plaintiff, the VE should have considered the fact that Plaintiff is markedly limited in his ability to interact appropriately with coworkers and respond appropriately to usual work situations and changes in a routine setting. In addition, Plaintiff argues that the VE should have considered Plaintiff's inability to deal appropriately with supervisors.

However, Plaintiff's arguments are based on an assumption that the ALJ erred in his treatment of the opinion of Dr. Cole and the testimony of Plaintiff and Ms. O'Neill. Because the Court affirms the ALJ's decision to discount such opinions and testimony, there is no error in the ALJ's RFC or hypothetical posed to the VE.

## CONCLUSION

The Court affirms the Commissioner's decision.

IT IS SO ORDERED.

Dated this 28 day of April, 2017

_Marco Hernández_
MARCO A. HERNÁNDEZ
United States District Judge